Terry BAXLEY and Nancy Davis *v.* COLONIAL INSURANCE CO.

CA 89-72                                    792 S.W.2d 355

Court of Appeals of Arkansas
Division II
Opinion delivered July 5, 1990

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellant Terry Baxley.

*James B. Bennett*, for appellant Nancy Davis.

*Dowd, Harrelson & Moore*, by: *Marshall H. Moore*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a summary judgment granted the appellee insurance company in its suit for a declaratory judgment against the appellants. The pleadings, exhibits, affidavits, deposition, and statements of counsel reveal the facts and circumstances out of which the crucial issue arises.

In May of 1986, Terry Baxley was a passenger in an automobile which was owned and being driven by Joel Hall. They were traveling south on State Highway 57 near Stephens, Arkansas, when the vehicle crossed the center line of the highway and collided with an oncoming vehicle being driven by Nancy Davis. Joel Hall had no liability insurance but Terry Baxley had a liability policy issued by the appellee on another car.

Ms. Davis sued Hall and Baxley in the Circuit Court of Columbia County, Arkansas, seeking damages alleged to have been sustained in the collision, and by amended complaint alleged both defendants were negligent. She specifically alleged that at the time of the accident, Baxley "joined in the operation and control of the vehicle" in that he "grabbed the person of Defendant Hall and/or the steering wheel of the vehicle just prior to and/or during the occurrence of said accident and thereby contributed to the accident."

After the complaint and amended complaint were filed by Ms. Davis, the insurance company filed a petition for declaratory judgment against Davis, Hall, and Baxley alleging that the policy Baxley had in force at the time of the collision did not obligate it to defend the suit brought by Ms. Davis or to satisfy any judgment rendered against Hall or Baxley in that suit; the petition stated

the insurance company was presently affording a defense to the suit under a "reservation of rights" arrangement; and it prayed for a declaratory judgment setting out the rights and obligations of the parties under the policy in force at the time of the collision.

Davis and Baxley answered the petition for declaratory judgment and alleged the company was obligated to both defend the Davis lawsuit and satisfy any judgment for damages entered as a result of the suit. No answer was filed by Hall. The insurance company subsequently filed its motion for summary judgment, and after responses and other matters were filed, and other proceedings were had, the circuit court granted the motion for summary judgment and entered a declaratory judgment holding the company had no obligation to defend the suit filed by Ms. Davis or to pay any judgment resulting therefrom. Davis and Baxley have appealed.

The liability coverage provided by the policy issued by the appellee to appellant Baxley provided:

> We will pay damages which any insured person is legally liable because of bodily injury and property damage arising out of the ownership, maintenance or use of your insured car.

> We will defend any suit or settle any claim for those damages as we think appropriate, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of liability has been paid.

The definitions applicable to the liability coverage involved in this case, defined an insured car as follows:

> (d) any car or utility trailer you use, that is not owned by you or any resident of your household, if such use is with the permission of the owner.

In the judgment granting appellee's petition for declaratory judgment, the trial court reasoned as follows:

> [T]he term "use" as contained in the subject insurance policy should and must be interpreted in a common sense

and practical way as expressed in *Hardware Mutual Casualty Company* vs. *Crafton*, 350 SW 2d 506. Further, the Court finds that the term implies use with "care, custody or control," and "with permission." From the facts of the case at bar, none of the foregoing requirements has been met.

■■ We pause here to point out that the "Declaratory Judgment" entered by the trial court was entered as a result of the court's granting the appellee's motion for summary judgment. Summary judgment is authorized by Ark. R. Civ. P. 56(c) when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact." In *Township Builders, Inc.* v. *Kraus Construction Co.*, 286 Ark. 487, 696 S.W.2d 308 (1985), the court said:

> "It is well-settled that summary judgment should be granted only when a review of the pleadings, depositions and other filings reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cummings, Inc.* v. *Check Inn*, 271 Ark. 596, 609 S.W.2d 66 (1980); Ark. R. Civ. P. 56. Summary judgment is an extreme remedy and any proof submitted must be viewed most favorably to the party resisting the motion and any doubts and inferences must be resolved against the moving party. *Leigh Winham, Inc.* v. *Reynolds Ins. Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983). In order to be entitled to a summary judgment, the moving party has to show there is no issue of fact. *Hurst* v. *Feild*, 281 Ark. 106, 661 S.W.2d 393 (1983).

286 Ark. at 490. *Wolner* v. *Bogaev*, 290 Ark. 299, 718 S.W.2d 942 (1986), the court said:

> It is an extreme remedy. *Dodrill* v. *Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979). The object of a summary judgment is not to try the issue but to determine if there are issues to be tried. *Ashley* v. *Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969). If there is any doubt whatever, it should be denied. *Southland Insurance* v. *Northwestern National Insurance Co.*, 255 Ark. 802, 502 S.W.2d 474

(1973).

290 Ark. at 302. And in *Walker v. Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981), the court said: "Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ." 3 Ark. App. at 210.

Before discussing the applicable law, we should also note that the record clearly shows that there is one disputed question of fact in this case. It is alleged in an amendment to the complaint of Ms. Davis, in her suit for damages, that Terry Baxley joined in the operation of the vehicle in which he was a passenger by grabbing "the person" of the driver, Joel Hall "and/or the steering wheel of the vehicle just prior to and/or during the occurrence of said accident." Although Mr. Baxley testified in a deposition that he took no action to try to help Hall get the car back on the road, the appellants, in response to the motion for summary judgment, filed an affidavit by Ms. Davis' brother who said that Baxley told him that he (Baxley) "grabbed the wheel, but it was too late." This certainly shows that there is a disputed question of fact in this case.

■ Moreover, we think this affidavit can be considered on the motion for summary judgment. In 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2738 at 483-84 (1983), the authors quote from a case that reversed a grant of summary judgment. *Corley* v. *Life and Casualty Ins. Co.*, 296 F.2d 449 (D.C. Cir. 1961). The court relied upon a hearsay statement in an affidavit, presented by the nonmoving party, which could constitute a declaration against interest. The opinion stated that it was possible that the alleged admission would be admissible and this was sufficient to defeat the motion for summary judgment. This view is approved by the treatise on the basis that "because the burden of proving that there is no genuine issue of material fact rests on the moving party, the opposing party is entitled to all of the favorable inferences that reasonably may be drawn from the papers before the court." So, while we are not able at this point to know whether this evidence will be admissible at trial, we think the affidavit must be considered in ruling upon the motion for summary judgment.

■ Under the procedure governing motions for summary judgment, one moving for summary judgment has the burden of establishing that there is no genuine issue of fact to be decided. The appellee points to the policy language that provides coverage for "any car . . . you use . . . if such use is with the permission of the owner," and cites *Maryland Casualty Co.* v. *Turner*, 235 Ark. 718, 361 S.W.2d 646 (1962), where it is stated that "the word *'used'* is, to some extent, employed by insurance companies as a substitute for the phrase 'care, custody, and control,' in exemption clauses in liability policies." However, the issue in *Turner* was whether the appellee, who had a contract to furnish rock for certain revetment work on the Arkansas River, was "using" a truck which fell into the river. The appellee had made subcontracts with truck owners to haul the rock, and this particular truck was being lowered over the river bank to enable the dropping of its load at the designated point when the appellee's bulldozer, to which the truck was connected by a cable, slipped and let the truck fall. The appellee's liability coverage did not apply to damage to "tools or equipment being used by the insured in performing his operations," but the supreme court affirmed the trial court's holding that the insurance company had to defend the appellee in the truck owner's suit for damages. Immediately after making the statement about the word "used," the court in *Turner* quoted from *Hardware Mutual Casualty Co.* v. *Crafton*, 233 Ark. 1020, 350 S.W.2d 506 (1961), as follows:

> The care, custody and control clause in liability policies, so far as our research has extended, appears to be almost universally used but its construction is, to a large extent, dependent upon circumstances of each case and we conclude that the phrase should be applied with common sense and practicality.

The court in *Turner* then said: "Therefore, approaching the construction of the phrase with common sense and practicality, we make use of the following quotation from *Great American Indemnity Co. of N.Y.* v. *Saltzman*, 213 F.2d 743 [8th Cir. 1954]. . . :"

> Of course if the term "use" is construed to embrace all its possible meanings and ramifications, practically every

activity of mankind would amount to a "use" of something. However, the term must be considered with regard to the setting in which it is employed.

235 Ark. at 720.

Using the approach indicated in the opinion in *Turner*, the court in *Crafton* affirmed the trial court's finding that the appellee's liability policy covered his liability when he moved the car of a customer who had just unloaded his fishing paraphernalia at appellee's boat dock. The appellee moved the car from the driveway to the parking area and had walked approximately 30 or 40 feet from the car when it rolled into the lake. The policy did not apply to "property in the care, custody or control of the insured" or to property to which the insured "for any purpose is exercising physical control," but the supreme court said "under the facts we are unwilling to say" that the coverage exclusion applied.

In the *Saltzman* case cited in *Turner*, the appellee who had just landed his plane at the airport in Flippin, Arkansas, being an airplane enthusiast, entered the cockpit of an unoccupied plane just to look at it and in the course thereof unintentionally started the engines and caused damage to the plane. His liability policy did not cover injury to property being "used" by him or in his "care, custody or control." The trial court held that the policy covered the appellee's liability for the damage to the plane and the appellate court affirmed. In addition to the language as to "use" quoted above, the court said the words "care, custody or control" did not contemplate the action of a trespasser inspecting the aircraft.

The above cases, we think, make it clear that the language "any car . . . you use . . . if such use is with the permission of the owner" in the policy in the instant case must be considered "with regard to the setting in which it is employed," *Saltzman*; and "is, to a large extent, dependent upon circumstances of each case," *Crafton*. Thus, we think summary judgment was inappropriate in the instant case. The complaint filed by Ms. Davis alleges that Terry Baxley joined in the operation of the vehicle by grabbing the steering wheel; Baxley's deposition said: "When I woke up, we were fixing to go off the side of the road." However, he denied that he took any action to help the driver get the car back on the road. But the affidavit of Ms. Davis' brother, attached to her response to

the summary judgment motion, states that at a certain place on a certain date, Baxley told the affiant that:

> As they reached the curve, Mr. Hall went on the shoulder of the right hand side, Mr. Hall snatched the car back, crossing into the wrong side of the traffic. Terry said he "grabbed the wheel, but it was too late."

The factual situations in the cases discussed above are not much help in deciding the instant case. But there are cases with factual situations somewhat akin to the one here, to which we can apply the interpretative guidelines disclosed by the cases discussed above. In *United States Fire Insurance Co. v. United Service Automobile Ass'n*, 772 S.W.2d 218 (Tex. Civ. App. 1989), it was alleged that a passenger in an automobile "suddenly and without warning grabbed the steering wheel of the car, causing it to leave the road." The policy contained a provision for liability coverage for "any person using your covered auto." The appellate court held summary judgment improper; the opinion states:

> At the time of the accident, it is undisputed that Anna was riding as a passenger in the Martin automobile. . . . Moreover, we conclude that a passenger who grabs the steering wheel of a moving automobile is "using" the automobile within the meaning of a liability policy.

772 S.W.2d at 221. *See also West Bend Mutual Insurance Co. v. Milwaukee Mutual Insurance Co.*, 384 N.W.2d 877 (Minn. 1986)(pointing out that courts have split on whether a passenger's grabbing of the steering wheel is operation of the vehicle).

On the issue of use "with permission of the owner," one court has said that a question of fact as to implied permission to operate the car is presented when one leaves it in a busy street in such a position that a reasonably prudent person should anticipate it must be moved. *Coons v. Massachusetts Bonding & Ins. Co.*, 207 N.Y.S.2d 819 (1960). And in *Viking Insurance Co. v. Zinkgraf*, 737 P.2d 268 (Wash. App. 1987), the court said "because ambiguities are to be construed in favor of the insured, a passenger who grabs the steering wheel can be said to be 'using the car.' " However, the court held, after considering the depositions, summary judgment was proper because "by unexpectedly

grabbing the steering wheel, Mr. Zinkgraf did not use or drive the car 'with the permission' of Mrs. Harris."

■ Applying the interpretative guidelines disclosed by the *Turner*, *Crafton* and *Saltzman* cases, and considering the factual situations in the cases just discussed where there was a "grabbing of the steering wheel," and the affidavit in the record in the instant case, we think the court erred in granting the motion for summary judgment.

■ We also agree that it was error to grant summary judgment against Baxley's claim that he is entitled to a defense. His cited case of *Orrill* v. *Garrett*, 241 N.E.2d 1 (Ill. Ct. App. 1968), holds that the word "use" is broader than "operate" or "drive" and that one may use an automobile by being a passenger. Baxley is being sued for conduct engaged in as a passenger and is entitled to a defense. *See also Gronquist* v. *Transit Casualty Co.*, 252 A.2d 232 (N.J. Super. Ct. Law Div. 1969). There may be an obligation to defend even though there is no duty to pay. *Equity Mutual Insurance Co.* v. *Southern Ice Co.*, 232 Ark. 41, 334 S.W.2d 688 (1960). The general rule is that the pleadings against the insured determine the insurer's duty to defend. *Mattson* v. *St. Paul Title Co. of the South*, 277 Ark. 290, 292, 641 S.W.2d 16, 18 (1982); *Fox Hills Country Club, Inc.* v. *American Ins. Co.*, 264 Ark. 239, 241, 570 S.W.2d 275, 277 (1978); *Commercial Union Ins. Co. of America* v. *Henshall*, 262 Ark. 117, 121, 553 S.W.2d 274, 276 (1977); *Proctor Seed & Feed Co.* v. *Hartford Accident & Indem. Co. & Ins. Co. of North America*, 253 Ark. 1105, 1107, 491 S.W.2d 62, 64 (1973). These cases also hold that there can be situations where the duty to defend cannot be determined solely from the pleadings. The Arkansas Supreme Court has stated that it is enough if the *possibility* of damages exists; if injury or damage within the policy coverage could result, the duty to defend arises. *Home Indem. Co.* v. *City of Marianna*, 291 Ark. 610, 618, 727 S.W.2d 375, 379 (1987).

For the reasons discussed above, we reverse the judgment entered by the trial court and remand this case for a trial on its merits.

JENNINGS and ROGERS, JJ., agree.